See also, D.C., 103 F.R.D. 172.

**Carl L. CUTLER, Thomas E. Blackburn, and Michael R. Baird, Plaintiffs,**

**v.**

**LEWISTON DAILY SUN, Defendant.**

**Civ. No. 84–0042 P.**

United States District Court,
D. Maine.

March 12, 1985.

Robert S. Hark, Isaacson, Hark & Epstein, Lewiston, Me., for plaintiffs.

Judith W. Andrucki, Normand R. Croteau, John V. Bonneau, Marshall, Raymond & Beliveau, Lewiston, Me., L. Michael Zinser, King, Barlow & Little, Nashville, Tenn., for defendant.

MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS AND PLAINTIFF'S MOTION TO COMPEL ANSWERS TO QUESTIONS PROPOUNDED AT DEPOSITION

GENE CARTER, District Judge.

Defendant has objected to and refused to answer numerous interrogatories, requests for production of documents and deposition questions propounded by Plaintiffs. In the two motions presently before the Court, Plaintiffs request the Court to compel Defendant to respond to all of the discovery inquiries to which Defendant has objected.

Defendant rests most of its objections to Plaintiffs' discovery inquiries on two

grounds: (1) that the information sought is irrelevant to the issues in the case; and (2) that the information sought is in the nature of trade secrets because disclosure would be harmful to its position vis-a-vis its competitors.

Under Fed.R.Civ.P. 26(b)(1), the parties may obtain discovery "regarding any matter, not privileged, which is relevant *to the subject matter* involved in the pending action ..." (Emphasis added.) The rule further provides that it is "not ground for objection that the information sought will be inadmissible at the trial if the information sought appears *reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added.) The phrase, "relevant to the subject matter involved in the pending action," has been construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *See also* 4 J. Moore, J. Lucas, G. Grotheer, *Moore's Federal Practice* ¶ 26.56[1] at 26–94 (2d ed. 1984).

■ There is no absolute privilege that immunizes trade secrets and similar confidential information from discovery. *See Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587 (1979); *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir.1981). In order to resist discovery of a trade secret, a party must first establish that the information sought is indeed a trade secret and then demonstrate that its disclosure might be harmful. *Centurion*, 665 F.2d at 325. Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets is relevant and necessary to the action. *Id.* The district court then must balance the need for protection of the trade secrets against the claim of injury resulting from disclosure. *Id.* Discovery should be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should be disclosed. *Id.* at 325–26. Determination of whether the need outweighs the harm of disclosure is within the sound discretion of the trial court. *Id.* at 326.

■ It is significant for purposes of deciding the pending motions that protection from disclosure of a trade secret or other confidential information may be obtained under Fed.R.Civ.P. 26(c)(7), which empowers the court to issue protective orders. Such protective orders may issue "[u]pon motion by a party or by the person from whom discovery is sought...." In this case, Defendant has not moved for a protective order.

■ Although numerous discovery inquiries are encompassed within the pending motions, it is unnecessary to review them one by one. In fact, the Court is able to dismiss entirely one ground for objection to the discovery inquiries, protection of trade secrets or other confidential information, because Defendant has in all instances failed to meet its burden. First, Defendant has not established that any particular information sought qualifies as a trade secret and that its disclosure might be harmful. *See Centurion*, 665 F.2d at 325. Defendant has labeled much of the requested information as a trade secret or as "commercially sensitive," but in no instance has Defendant explained how disclosure of such information would be harmful to its business interests. Second, the structure of Rule 26 demonstrates that the means by which protection from discovery of trade secrets is to be obtained is by motion under Rule 26(c)(7). As was noted above, no such motion has been filed. Accordingly, Defendant's claim that the requested information constitutes trade secrets or confidential information must fail.

Defendant's contention that certain of the information sought is irrelevant requires a closer review of the discovery requests. The information sought may be broken down into several categories for purposes of determining its relevancy.

■ A number of the disputed discovery requests would yield information pertaining to Defendant's involvement in interstate commerce. See interrogatories 8, 9, 12, 15, 18, 19, 20, 21, 23, 34. Defendant contends that such information is irrelevant because Defendant has admitted that it is involved in interstate commerce and has stipulated as to the existence of federal subject matter jurisdiction. Plaintiffs argue that information respecting Defendant's activity in interstate commerce is also relevant to Plaintiffs' claim that the alleged tying arrangement, which is at the center of this antitrust case, affects a "not insubstantial" amount of interstate commerce. That the degree of the effect upon interstate commerce of any alleged tying arrangement is relevant to Plaintiffs' claim under the Sherman Act is made clear in *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), where the Supreme Court stated that tying arrangements

> are unreasonable in and of themselves when a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a "not insubstantial" amount of interstate commerce is affected.

*Id.* at 6, 78 S.Ct. at 518; *see also, e.g., Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). Unless Defendant has stipulated that a "not insubstantial" amount of interstate commerce is affected by its actions for purposes of a cause of action under the Sherman Act, Plaintiff's attempts to obtain information regarding Defendant's activities in interstate commerce are within the proper scope of discovery under Rule 26(b). The Court's understanding is that there has been no such stipulation; therefore, Defendant must respond to the interrogatories.

A number of interrogatories, requests for production and deposition questions seek to discover information respecting any market studies, discussions of market strategy, or feasibility studies engaged in by Defendant in preparation for publication of its Sunday newspaper, which is alleged by Plaintiffs to be the tied product in this case. It is with respect to this category of information which Defendant most vigorously presses its confidentiality claim. Defendant has refused to indicate even whether such information or market studies exist. The confidentiality claim has been rejected for the reasons expressed above. However, Defendant also contends that such information is irrelevant. Plaintiffs argue that the information is relevant in several respects. First, market studies may indicate Defendant's view of what is the market for what is alleged to be the tied product, that is, the Sunday newspaper. Second, Plaintiffs contend that the market studies and information regarding marketing strategies may contain information regarding Defendant's motives with respect to subscription sales policies, which obviously are relevant to the central dispute in this case. Third, Plaintiffs contend that market studies or information regarding marketing strategy may contain information relevant to Defendant's view of whether Defendant's newspaper is a separate product or part of a product which also includes Defendant's daily newspapers.

■ Defendant argues that Plaintiffs' assertions of relevancy are mere conjecture. Such conjecture, however, is not unreasonable. Plaintiffs are handicapped by the fact that Defendant has refused to admit even whether such information exists. Moreover, the likelihood that Plaintiffs' discovery requests will produce relevant information is high. At the heart of the dispute in this case is the manner in which Defendant marketed its new Sunday newspaper. Thus, it appears that market studies or marketing strategies prepared in anticipation of the marketing of the Sunday newspaper would be relevant, within the broad meaning of that term as it is used in Rule 26(b), to the issues in this case. Defendant has produced no means by which the Court can separate relevant from irrelevant information sought in Plaintiffs' discovery. Accordingly, the Court must per-

mit the discovery to go forward. Defendant must respond to interrogatories 31 and 32, requests for production of documents 2, 3, and 5, and all deposition questions to which Defendant interposed objection on the ground that information regarding market studies and feasibility studies is not discoverable.

In interrogatories 47 through 49, Plaintiffs sought information regarding the frequency, geographic area and cost of advertising on television and radio undertaken by Defendant with respect to its Sunday newspaper, the *Lewiston Sun,* and the *Lewiston Journal.* In request for production of documents 4, Plaintiffs requested the transcripts of any such advertisements. Plaintiffs contend that the interrogatories regarding the geographic location, frequency, and cost of Defendant's radio and television advertising "will shed light upon the Defendant's perception of its geographic and product market." The Court is not at all convinced that Defendant's perception of the market for its products is relevant to determination of the *actual* market. However, information concerning advertising may produce circumstantial evidence relevant to definition of the relevant market in this case. Therefore, interrogatories 47 through 49 must be answered. Plaintiffs argue that the text of advertisements by Defendant may contain admissions or statements against interest with respect to the question of whether Defendant's Sunday newspaper is indeed a separate product. Plaintiffs have given no reason why Defendant's advertisements of its daily newspapers would contain such admissions or statements against interest. Accordingly, only the texts of Defendant's advertisements with respect to Defendant's Sunday newspaper meet the test of relevancy, and Plaintiffs' Motion to Compel Production of Advertisements for Defendant's daily newspapers must be denied.

Interrogatories 43 through 45 request the names and addresses of persons who canceled their subscriptions to Defendant's newspapers at various times. These interrogatories make references to persons identified in other interrogatories. As reported in Defendant's Amended Answers and Objections to Plaintiffs' Interrogatories, Set No. 1, these references make no sense. Thus, the Court cannot properly evaluate these interrogatories individually. Generally, however, Plaintiffs insist that the names and addresses of persons who have canceled their subscriptions is relevant to determining whether such persons would be appropriate members of the class proposed by Plaintiffs in their Motion for Class Certification. Based upon this rationale, the only names and addresses that would be relevant would be those of persons who canceled their subscriptions after the marketing of the Sunday newspaper had begun. Accordingly, Plaintiffs' Motion to Compel will be denied insofar as it seeks the names and addresses of persons canceling before that time.

Defendant objected to a number of interrogatories on the grounds that either the information sought was unavailable or that its production would be unduly burdensome or expensive. There is no need to deal with these objections on a one-by-one basis. In no instance has Defendant indicated why the sought-after information is unavailable or why its production would be unduly burdensome or expensive. In order to make a determination whether Defendant's objection has merit, the Court must be provided with the information necessary to support Defendant's objection. Since no such showing has been made in the argument of these motions, the Court rejects these grounds for objection.

There remain to be considered several deposition questions which do not fit within the categories discussed above. An employee of Defendant, Thomas Kelsch, was asked the following questions by Plaintiffs' counsel:

Q Mr. Kelsch, do you agree that *Sunday* is a separate product from the *Sun* or the *Journal?*

. . . .

Q Mr. Kelsch, you have previously stated, in fact, that the Sunday newspa-

per was not merely a seventh paper but is a separate product, haven't you? Kelsch Deposition at 30. Defendant's counsel instructed Mr. Kelsch not to answer the questions. Defendant argues that the questions need not be answered because they seek a legal conclusion with respect to an issue in this case. Indeed, the issue of whether *Sunday* is a separate product from the Defendant's daily newspapers is a significant legal issue in this case. The Court would have serious reservations about permitting such a question to be asked and answered in a trial before a jury. However, under Rule 26(b)(1), the information sought need not be admissible at the trial. Since these questions meet the liberal relevancy test of Rule 26(b)(1), Mr. Kelsch must respond to them.

Mr. Kelsch was also asked whether he had any discussion with any person "with reference to either expected or actual customer resistance to the combination of the subscription to the Sunday paper with the subscription to the six-day-a-week daily paper?" Kelsch Deposition at 50. Mr. Kelsch was instructed not to respond to the question. Defendant argues that the information sought is confidential. For the reasons stated above, this ground of objection is rejected, and Mr. Kelsch must answer the question propounded.

In Plaintiffs' deposition of Mr. Costello, an employee of Defendant, Plaintiffs' counsel asked, "How much additional money does it cost the *Lewiston Daily Sun* to publish the *Sunday Sun Journal?*" Costello Deposition at 42. Mr. Costello was instructed not to answer the question. Defendant objects on the grounds that the question had already been answered by Mr. Costello, the information is irrelevant, and that the information is confidential. The Court has determined that the question in this form was not answered by Mr. Costello previously in his deposition. The question may produce information that is relevant to Defendant's marketing strategy with respect to its Sunday newspaper. Again, because there is no support for De-

fendant's claim of confidentiality, that claim must be rejected. Accordingly, Mr. Costello must answer the question.

In order to bring the prolonged discovery in this case to a conclusion as quickly as possible, the Court will order that any motions for a protective order or other discovery motions pertaining to the issues discussed in this Memorandum are to be filed within ten (10) days. Any motion for a protective order restricting use and dispersal of the information required to be produced by this Memorandum of Decision must provide the proposed order, setting out the desired restriction.

The Court is aware that the discovery deadline in this case was March 1, 1985. That deadline will be extended, for purposes only of completing the discovery required by this Order, to a date thirty (30) days from the date of this Memorandum of Decision.

Accordingly, it is ORDERED that

(1) Plaintiffs' Motion to Compel Answers to Interrogatories and Production of Documents and Plaintiffs' Motion to Compel Answers to Questions Propounded at Deposition are hereby GRANTED, except in the following respects:

A. Plaintiffs' Motion to Compel is DENIED as to interrogatories 43 through 45, except that discovery will be permitted of the names and addresses of those persons who canceled subscriptions after the date that production of Defendant's Sunday newspaper began.

B. Plaintiffs' Motion to Compel as to request for production of documents 4 is DENIED, except that discovery of transcripts of radio and television advertising by Defendant with respect to Defendant's Sunday newspaper shall be permitted.

(2) Any motions for protective orders governing the use and dispersal of information required to be produced by the Memorandum of Decision herein shall be filed no later than ten (10)

days from the date of this Memorandum of Decision.

(3) The discovery deadline in this case is extended, for purposes only of completing the discovery required by this Order, to a date thirty (30) days from the date of this Memorandum of Decision.

So ORDERED.